## SHERROD AND SHERROD v. LANGDON AND LANGDON.

1. Fraud: MEASURE OF DAMAGES. A party sold a lot of sheep, representing them to be free from any disease, and especially such as " foot-rot" and "scab," which representations were false; and other sheep owned by the purchaser became diseased, because of the diseases above mentioned, imparted to them by the unsound sheep so sold to him : *Held*, that the purchaser was entitled to recover damages from the vendor for the injuries they sustained, and this without reference to whether or not it was known to such vendor, at the time such representations were made, that the purchaser owned other sheep.

2. Estoppel: PARTNERSHIP. A party who participates in negotiations for a contract of sale, and holds himself out as a partner in the ownership of such property, is estopped from denying such partnership, as against the purchaser.

3. Fraud: FALSE REPRESENTATIONS: DILIGENCE. The purchasers of diseased animals, on representations by the vendor that they were free from disease, cannot recover against such vendor for damages which could have been avoided by the exercise of due care and diligence. What constitutes due diligence, must be determined upon the facts of each case.

*Appeal from Wapello District Court.*

THURSDAY, DECEMBER 20.

PLAINTIFFS seek to recover damages resulting, as they allege, from the purchase by them of defendants, of a certain lot of sheep.

In one count it is alleged that the sheep were warranted sound, in the other that they were represented to be free from any disease, and especially such as "foot-rot" and "scab"—that this was false, &c. Upon issue joined, there was a trial; verdict for plaintiff, judgment thereon, and defendant appeals.

*Hendershott & Burton* for the appellants.

*Perry & Townsend* for the appellees.

WRIGHT, J.—No part of the testimony is before us, and what the facts were, therefore, we have no means of knowing. The errors assigned relate to the instructions given by the court, and raise for our consideration these questions:

1. FRAUD: measure of damages.

I. Plaintiffs had, at the time of purchasing these sheep, other sheep, and these, as they claim, became diseased and died because of the "foot-rot" and "scab" imparted to them by the unsound sheep so sold to them by defendants, without fault, &c. The injury to these sheep so owned prior to this purchase, under the instructions, entered as an element in the damages recovered by plaintiffs.

And now the point made is, that this was improper, unless defendants knew at the time of such sale that plaintiffs had other sheep. It is not claimed that such damages would not be the natural consequences of defendants' (fraudulent) act, and as such properly recoverable in this action; but the claim is, that this could only be so upon the theory that defendants knew that plaintiffs had other sheep to be infected by the diseases named.

Upon principle this position is not sustainable. Plaintiffs were entitled to recover all the damages of which the act complained of was the efficient cause. The loss of the sheep sold in consequence of their unsound condition

was the natural and usual consequence of the act. The other damages were special and peculiar, and they were set forth specifically by the pleader. And upon the assumption that plaintiffs used the care and diligence required at their hands, what matters it whether defendants knew that they had other sheep or not? Or what difference would it make if plaintiff, in ignorance of the unsound condition of these sheep, had afterward bought other sheep, which they lost by reason of the disease communicated to them by those bought of defendants? Defendants sold the sheep with the knowledge that plaintiffs had a right to and probably would place them upon their farm; and, if guilty as charged, they would be held liable for the damages naturally and reasonably resulting from such act. It is known as a matter of fact, that most farmers in this State do keep sheep, and nothing is more important to their success than to secure good, sound flocks. If one lot is procured, there is no duty to refrain from purchasing others, lest those purchased may be unsound, and thus all be lost. But the guarantor, or party making the false representations, sells with a knowledge that his purchaser may have or may purchase other sheep, and cannot screen himself from the consequences of his act upon the ground of ignorance. As well might he sell a weapon dangerous and "infernal" in its structure, representing it to be harmless, and nothing more than a desirable improvement in fire-arms, and then escape liability for injury to the purchaser's home or family on the ground that he did not know that he had either. The ground of the recovery is, that the loss actually happened while defendants' wrongful act was in operation—a loss attributable to their wrongful or fraudulent act, and it is not for them to say, we did not know plaintiffs had other sheep, and hence did not contemplate or undertake to be liable for so great a loss. *Barnum* v.

*Vandusen*, 16 Conn., 200; *Jeffreys* v. *Bigelow*, 13 Wend., 518.

II. The court instructed the jury, that if Henry Langdon (one of the defendants) participated in the sale of,

2. ESTOPPEL: partnership. and so talked and acted in connection with the sale of said sheep as to lead plaintiffs, as reasonable men, to believe the said Henry was a partner in said sheep, and they so understood it, and (he) did not correct the impression, then he is estopped from now denying it as against plaintiffs. The giving of this instruction is now assigned as error, upon the ground that the defendant Henry is not liable, if not the owner or party beneficially interested, unless his representations were relied upon and induced the purchase. And we are referred, as sustaining this argument, to *McCracken* v. *West* (17 Ohio, 16). There, however, the representations were made *to* one person or firm, and a third party claimed the benefit of it. No such question is made or arises in this. Nor does the point made in argument arise, for the only proposition ruled by the instruction is, that this defendant might be liable though not a partner or interested in the sale, if he held himself out as such, and induced the plaintiffs to believe that he was such partner.

That defendants would not be liable for the fraud, unless plaintiffs relied upon the representations made, was not a question, for this was clearly stated in other parts of the instruction. Whether the owner or not, there was no liability unless his representations were believed. And we cannot therefore see the pertinency of the objection stated.

III. There is no dispute as to the duty of plaintiff to use due care and diligence in preventing the spread of

3. FRAUD; false representations: diligence. the contagion, and in curing those infected and diseased, and it is admitted that they could recover no damages which they might

have avoided by the use of such care and skill. The court instructed that they were not required to use the utmost care, nor the highest human skill; and with much else upon the same subject use this language: "If they (plaintiffs) used reasonable diligence and care, to obtain and apply such remedies and relief as the experience and knowledge of sheep men in that community afforded them, they did all that was required of them," and it is now insisted that this is not the correct rule.

The cases cited by appellant, only go to the point that plaintiffs should show care and diligence on their part as well as fraud or misconduct on the part of defendants. To this effect are *Lane* v. *Crombie*, 12 Pick., 177; *Smith* v. *Same*, 2 Id., 621; *Butterfield* v. *Forrester*, 11 East., 60; *Flower* v. *Adams*, 2 Taunt., 314; *Rathburn* v. *Payne*, 19 Wend., 399; *Woolf* v. *Beard*, 8 C. & P., 373; *Sills* v. *Brown*, 9 Id., 601.

But here the question is, what will amount to such ordinary care and diligence? Were plaintiffs bound to go abroad, and to seek advice and information from the most experienced herders of sheep in any part of the country, whether in this State or elsewhere? We certainly think not. The words "sheep men" and "community" must have a reasonable and practical construction. By the language "sheep men" is not meant the owner of a few sheep having no experience or opportunity to acquire the same. Nor does "community" mean three or four farmers or neighbors, but the society or public generally where plaintiffs herd. And if they obtained and applied the remedies used and recommended by "sheep men"—men having knowledge of the disease and of the means requisite and usually applied in relieving the same—in that "community," this was *prima facie* due care and diligence, and they were not required to do more. Of course what would be due care under some

circumstances would be gross negligence under others, and no certain, inflexible rule can be given.  Thus, if it appeared that the advice of one or more men, having extraordinary opportunities for information and possessing large experience, could have been obtained by going a short distance beyond the strict line of the " community," so called, it might show negligence on the part of plaintiffs to have failed to avail themselves of such advantages. But in the absence of such showing, or some similar fact, we cannot say, as a rule, that they were bound to do more than was required of them by this instruction.   The diligence required was only such as a prudent man in such a situation, and under the circumstances, would have observed to prevent loss. *Bizzell* v. *Booker*, 16 Ark., 308.  And while plaintiffs might, out of abundant caution, have consulted experienced sheep growers in other localities, the law did not require it of them.

Let the judgment be

Affirmed.