# MICHAEL MARSH,

## *vs.*

# ISAAC WEBBER.

Where a fraudulent sale and warranty of personal property has been made, the vendee may rescind the contract, return the property, and recover back the price paid therefor, or he may affirm the contract and recover damages for the fraud.

Where the vendee, retaining the property, brings an action to recover damages for the fraud, he may recover all the damages of which the act complained of was the efficient cause.

Where there is a fraudulent warranty in the sale of a flock of sheep, the warranty being single, and relating to an infectious disease, the plaintiff is entitled to recover the whole loss occasioned by the presence of the disease among the flock purchased, as well among those of the flock which took the infection after the sale, without the fault of the plaintiff, as those which had it when the sale was made. He may also recover such consequential damages as have resulted to another flock owned by him at the time of the purchase, from such infectious disease communicated to it by the flock purchased, by reason of their being mingled together ; the plaintiff being ignorant of the existence of the disease in the flock purchased, and not being chargeable with want of ordinary care in the premises.

The testimony in the case considered with reference to its sufficiency to sustain the finding of the jury as to the amount of damages returned for plaintiff.

The question of ordinary care in the management of the property, is one of fact for the jury.

The testimony in this case in reference to the exercise of ordinary care on the part of the plaintiff, considered and determined as to its sufficiency to support the verdict.

Certain interrogatories put to witnesses on the trial, the tenor of which was, " What was the difference on the 21st of September [the

Marsh v. Webber.

day of the sale and purchase of the sheep] between the value of these sheep in the condition they were seen and described by the witnesses to be at the subsequent periods designated, and their value if sound ;" *Held*, not to be erroneous.

This is an appeal from an order of the district court for Rice county, denying defendant's motion for a new trial. A sufficient statement of the case appears in the opinion of the court.

Batchelder & Buckham, for Appellant.

Gordon E. Cole, for Respondent.

*By the Court*—McMillan, J.—The complaint alleges, that on the 20th of September, 1866, the plaintiff purchased of the defendant 432 sheep, for the sum of $1,275; that the defendant knowing at the time that the sheep were unsound and diseased with a contagious disease called the scab, falsely and fraudulently represented to the plaintiff, that the sheep were all sound, and right and free from any disease, and the plaintiff, relying upon such false and fraudulent representations, and believing them to be true, purchased the sheep. The complaint further alleges, that the plaintiff, at the time he purchased the said sheep of the defendant, was the owner of 315 other sheep, which were all sound and free from disease, and of the value of about $1000, and not knowing that the sheep purchased from the defendant were unsound and diseased as aforesaid, and believing the false and fraudulent representations of the plaintiff as to their soundness, put the sheep purchased of the defendant with his other sheep, and that the sheep purchased of the defendant as aforesaid, communicated said disease to the plaintiff's other 315, and thereby all the other sheep of the plaintiff became unsound, and had said disease, and were and are of little

Marsh v. Webber.

value to the plaintiff, and by reason of such facts the plaintiff has suffered and been damaged, etc.; demanding judgment for $3,500 damages.

The answer admits the sale of 431 sheep for $1,275; avers that the defendant has no knowledge or information sufficient to form a belief, as to whether plaintiff at the time of the purchase was the owner of 315 sheep, and whether the same were all sound and free from disease, and were of the value of $1,000, or whether the plaintiff put the sheep purchased of the defendant with his other sheep; admits that the plaintiff did not know the sheep sold to him by defendant were diseased with the scab, or otherwise, and avers that they were sound and free from all disease, and denies that plaintiff has been damaged in any sum.

Upon a second trial of the cause, the jury returned a verdict for the plaintiff of $2,500. A motion for a new trial was made by the defendant, which was denied by the district court, whereupon the defendant appealed from the order.

The first point made by the defendant is that the damages are excessive.

Under the pleadings in this case, it will be presumed, in support of the verdict, that there was an express warranty of the soundness of the sheep; that they were unsound, and that the defendant, knowing they were not sound, made the warranty fraudulently.

Where a fraudulent sale and warranty of personal property has been made, the vendee may rescind the contract, return the property, and recover back the price paid therefor, or he may affirm the contract, and recover damages for the fraud.

In this case the property was retained by the vendee, who brings the action to recover damages for the fraud.

Marsh v. Webber.

The plaintiff was entitled to recover all the damages of which the act complained of was the efficient cause. *Sherrod vs. Langdon*, 21 *Iowa*, 518.

As to the flock purchased by the plaintiff from the defendant Webber, the warranty being single, and relating to an infectious disease, the plaintiff was entitled to recover the whole loss to him occasioned by the presence of the disease among the flock purchased, as well among those which took the infection after the sale, without the fault of the plaintiff, as those which had it when the sale was made. *Bradley vs. Rea*, et al., 14 *Allen* 20 ; *Wentz vs. Morrison*, 17 *Texas* 372; *Sedgwick on Damages*, 296, note 1, *and authorities cited*. Also all damages to his own flock by reason of such contagious disease communicated to it by the flock purchased, by reason of their being mingled together.

The testimony in the case may reasonably be considered as sufficient to support the conclusion, that the Webber flock, by reason of the existence of the disease at the time of the sale and its subsequent developments and effects, was of no value, and that the plaintiff's damages were the entire value of the sheep at the time of the sale, as they were warranted to be ; the value it is admitted was $1,275.

So far as the plaintiff's original flock is concerned, the testimony shows that the whole flock was diseased, and that before the 1st of May, 1867, 465 of the entire flock died of this disease ; that in July, 1867, there survived but 258 of the joint flock, which number it appears the plaintiff afterwards drove to St. Paul and sold.

It appears in the testimony, that in the spring of 1867, the sheep, if sound, would have been worth $4 or $5 per head, and in their actual condition were not worth more than $1 per head. It would be competent for the jury, in

view of the fraud in the sale, to allow the highest of these sums. Assuming—as it is the most favorable view for the defendant—the 258 sheep sold by the plaintiff, and 19 drowned in the spring, to be of the plaintiff's original flock, and estimating their value in their diseased condition at $1 per head the difference between their value and the value of sound sheep at $5 per head, would at $4 per head, be $1,108.

The value of the remaining 38 of the flock of 315, originally owned by the defendant, (having died of the disease) at $5 per head, would be $190. These sums together amount to $1,298, for the plaintiff's original flock, making the aggregate damages to both flocks $2,573, which is a greater amount than that allowed by the jury.

But the defendant claims that the plaintiff was guilty of negligence in omitting to separate the sound sheep from those diseased, and neglecting to use the ordinary care in checking the disease, or curing it, whereby great damages resulted, which by ordinary care might have been avoided.

There is evidence tending to show that the plaintiff did not discover the existence of the disease at all, until the 26th of October, more than a month after the purchase of the sheep from the defendant, during all which time the flocks had mingled together. The plaintiff did not separate any of the sheep from the others, nor did he do anything to check or cure the disease before July of the next year (1867).

The plaintiff was bound to use ordinary care in the management of this property, and if through his failure to exercise ordinary care, the injury to the sheep was increased, to that extent he cannot recover for the injury.

There is evidence tending to show that the plaintiff was ignorant of the existence of this disease until the 26th of October; that it is of a very contagious nature; that in

some instances in the Webber flock it must have been of four or five months standing, and must have infected more or less severely large numbers of the Webber flock, if not the entire flock at the time of the sale; that in this condition, the two flocks were mingled on the 22d of September; that they thus remained mingled together from the date mentioned till the 26th of October following

Under these circumstances, it would seem very doubtful, at least, whether any subsequent separation would have availed to prevent the extension of the disease; there is no evidence, at least, showing that separation after the 26th of October would have prevented the extension of the disease, and it was certainly a question for the jury.

The testimony is contradictory as to whether it would be prudent, under ordinary circumstances, in this climate, to dip the sheep after the 26th of October, one of the defendant's witnesses (Humphrey) testifying on his cross examination that he would not try to cure the disease in the winter months, but check it by application to the sores, and should not dip sheep as late as the 26th of October.

While most of the witnesses state it as their opinion, that this disease of scab is curable in winter and summer, they agree that it is more difficult in winter than in summer, and is especially difficult to cure in large flocks; and in almost every instance the witnesses, stating their opinion as to curing the disease, when called to testify as to their actual experience, state that in their own sheep, in flocks of less number than the plaintiff's, and in some cases small flocks, their attempts to cure the disease, or even to check it, failed, and the sheep died.

It appears, too, in this case, that the sheep were well housed and fed, and in all other respects well cared for, yet deaths occurred from time to time through the winter, from

the early part of it, 300 having died between the beginning of January and the 10th of April; one witness stating that it was a matter of every day occurrence for sheep to die that winter; another witness testifying that they died pretty fast, "I saw six or seven die in a pile together," all tending to show that the disease extended to the entire flock, and was of a virulent character.

In view of all the testimony in the case, which we cannot further advert to in detail, we are of opinion that the jury from the evidence may well have found the existence of a state of facts which would show that there was no want of ordinary care on the part of the plaintiff in the management of these sheep, the exercise of which would have prevented or diminished the damages he has suffered. The objection, therefore, cannot be sustained, either to reduce the amount of damages, or to defeat entirely the plaintiff's recovery.

On the trial of the cause the plaintiff having called George Follett as a witness, in the course of his examination asked the witness the following question : " What was the difference, if any, between the value of these sheep as you saw them October 26th, and their value if they had been sound the 21st of September ?"   Also, " What was the difference, if any, between the value of these sheep as you saw them in the spring of 1867, and their value if they had been sound on the 21st of September ?"   The plaintiff also asked the witness Robertson; " What would be the difference in value of these sheep September 21st, 1866, as described by the witnesses, and the same flock if sound ?"   Each of these questions was objected to by the defendant as irrelevant and incompetent, the objections were overruled and the defendant excepted.

There is some obscurity about these questions as put to the witnesses, but we understand the tenor of the interroga-

Marsh v. Webber.

tories to be, what was the difference, on the 21st of September, between the value of these sheep in the condition they were seen and described by the witnesses to be at the subsequent periods designated, and their value if sound.  In this view, and restricting the application of the interrogatories to the Webber flock, the questions are based upon the theory that the measure of plaintiff's damages was the difference in the value of the sheep, if sound, as warranted, on the 21st of September, and their value at the same time in the condition they actually were, or afterwards became, by reason of the diseased condition at the time of the sale.

This rule, if not the correct rule, would at least be as favorable a rule as the defendant could require, and is one to which he could not object.

If it be said that the interrogatories referred also to the flock originally owned by the plaintiff (which we think is not the case), the defendant could not have suffered any injury, since it appears that the value of the sheep in the spring of 1867, was greater than on the 21st of September.

The interrogatories objected to, therefore, were properly allowed by the court.

The answer of the witness Follett to the second of the above questions was clearly not responsive; and if the defendant desired to take advantage of that fact he should have moved to strike out; but no such motion was made; and further, from the amount of damages allowed, it would seem that the jury could not have estimated the value of the Webber flock at a sum exceeding three dollars per head, which it is conceded by all parties was their value if sound on the 21st of September

The order denying a new trial is affirmed.