**Harold NICHOLSON, Appellant,**

v.

**Elmer HEIDEN, Appellee.**

**No. 16068.**

United States Court of Appeals
Eighth Circuit.

April 15, 1959.

A. E. Sheridan, Waukon, Iowa (Sheridan & Sheridan, Waukon, Iowa, on the brief), for appellant.

C. Stanley McMahon, St. Paul, Minn. (Thomas A. Flynn, Houston, Minn., on the brief), for appellee.

Before SANBORN, WOODROUGH, and VAN OOSTERHOUT, Circuit Judges.

## WOODROUGH, Circuit Judge.

This action arose out of the sale of 180 feeder pigs by plaintiff (appellant) to defendant at plaintiff's home town of Carpenter, Iowa, on March 3, 1954. Plaintiff had bought 240 feeder pigs in Arkansas and caused them to be trucked to his sales barn at Carpenter where he showed them for sale to defendant. Defendant lived on and farmed his 476 acre farm near Rushford, in Minnesota, and wanted pigs there to fatten for market. He made careful inspection of the feeder pigs at the barn, and called his wife to look at them also. He had long experience with hogs and made selection of the 180 head after prolonged talk with plaintiff and a man plaintiff had there with him to do the sales talking, named Gueltzow. In consideration for the 180 pigs defendant gave plaintiff his check on the Rushford bank for $3,000 on March 3, 1954, and his additional check for $1,869 on the same bank when the pigs were delivered on March 5, 1954. An expense of $126 for vaccination of the pigs before delivery was included in the amount of the checks. Defendant caused the pigs to be trucked to his farm and within 24 hours they showed signs of being diseased.

Although the incubation period for hog cholera was shown to be from five to fourteen days, it appeared that one pig of the 180 pigs sold on March 3rd and delivered on March 5th, died on March 5th with cholera and other diseases and three more died on the 7th; two died each day for three days beginning on the 12th, and altogether 35 of them died up to June 13th. Some never fattened but did survive and were sold at seven dollars per hundred weight in a market for top hogs at $24 per hundred weight. Though the usual feeding period for healthy feeder pigs would have been from six weeks to two months, these were fed nearly four months and they never became "top hogs."

The defendant stopped payment on his two checks before they reached the bank and they have remained unpaid.

Defendant's farm was promptly quarantined by reason of the hog cholera and the other diseases among the pigs and it was apparent that they had no market value at the time they were sold to defendant.

Defendant proceeded, nevertheless, in a reasonable manner to mitigate damages. He took care of and fed and provided medical treatment for the pigs, and removed and sold 140 other pigs he had on the farm to avoid contagion, so that in spite of deaths and failure to fatten in a normal period or at all on account of their sickness, defendant ultimately obtained the sum of $4,339.92 from marketing such of the 180 hogs as survived and he lost none of his other pigs from contagion.

Plaintiff brought this action on the two checks given him by the defendant as negotiable instruments importing consideration and prayed recovery of the amount thereof with protest fees, interest, and costs.

The defendant alleged in answer to the complaint that he gave the checks as the agreed price of the 180 feeder pigs and that " * * * as a part of the consideration [of the sale of the feeder pigs] * * * plaintiff warranted to defendant that said feeder pigs were free from disease, were suitable for transportation into the State of Minnesota, and that

[the purchase price] * * * was the reasonable market value of said pigs." "That there was a complete failure of consideration for said sale in that said feeder pigs were diseased with hog cholera, parasites, necro-samanella and mange, were not suitable for transporting into the State of Minnesota, and had no market value." He prayed that the " * * * plaintiff take nothing by his alleged cause of action * * *".

Defendant also pleaded as "counterclaim" that he had incurred expenses for veterinary and medicine in attempting to cure said diseased pigs and had been compelled to sell 140 other feeder pigs which he had on his farm at a loss of profit in order to avoid contagion. That he had incurred expense for trucking, labor in attending sick pigs and burying dead ones, and cleaning up after disease—all as a direct and proximate result of plaintiff's said breach of warranty. The aggregate amount of his loss of profit and specified items of expense was $5,800 for which he prayed judgment.

In reply to the defendant's answer and in answer to the counterclaim, plaintiff admitted or alleged that the checks he sued on were given for the agreed purchase price of the 180 feeder pigs; that defendant inspected the pigs before he bought them; took and retained possession of them and became the owner of them, and whatever expense he incurred was for his own use and benefit; that defendant's alleged loss of profit was merely speculative and that defendant's pleading failed to state facts which would be the basis of a valid claim or constitute a cause of action against the plaintiff. He denied defendant's allegations as to warranty.

The case was tried to the court without a jury and the findings and conclusions of the court were accompanied by a very complete memorandum decision ordered to be made a part thereof. (Not published.)

After finding the federal diversity jurisdiction and the defendant's issuance of the checks for the price of the 180 pigs and the non-payment thereof, the further findings and conclusions of the court were as follows:

"* * * 5. That at the time of the sale of said hogs plaintiff represented and warranted to defendant that said hogs were in good condition and were free from disease.

"6. That at the time of the sale of said hogs they were not in good condition or free from disease but were, in fact, suffering from cholera, enteritis and pneumonia.

"7. That there was a breach of express warranty by plaintiff as well as a breach of an implied warranty of fitness as to the condition of the said hogs.

"8. That in attempting to cure said diseased hogs and minimize his damages, defendant employed veterinarians and incurred other expense for feeding and hauling in the total amount of $3,423.20 which amount was reasonable. That the fair market value of the surviving hogs when marketed was $4,339.92.

"9. That considering the condition of the diseased hogs on March 3, 1954, and considering the expense of caring for said hogs, feeding, raising and marketing the same, their fair market value on March 3, 1954, was $916.72.

"10. That the consideration for said checks, in so far as the same represented a payment of the price of $4,743.00, failed to the extent of the difference between said $4,743.00 and $916.72 and the defendant is entitled to judgment on his counterclaim in the amount of $3,826.28 as an offset against plaintiff's claim of $4,869.00 which is the total of defendant's checks."

Upon the foregoing findings of fact the court made the following conclusions of law:

"1. Plaintiff is entitled to judgment against defendant in the amount of $1,042.72 with interest

at the rate of six per cent per annum from March 3, 1954.

"2. Neither party is entitled to costs. * * * *"

The court declared in the memorandum decision that the "pigs had no market value at the date of the sale" and that "condition remained until after medical treatment, feed and care had been expended by defendant". But "after medical treatment and prolonged feeding the pigs did acquire a market value. The Court, therefore, would not be justified in determining on these facts that there was an utter lack of consideration for the [checks sued on] * * *." The court found "the usual rule of damages on breach of warranty, namely, the difference in value between the hogs as warranted and their actual value * * *", inapplicable as to the sale of the pigs. Instead the court took the price defendant ultimately obtained for the hogs on the market and deducted from it the amounts defendant proved that he had been obliged to expend on them in order to bring them up to that value, and held that the excess defendant obtained over the amounts he expended should be treated as the value of the pigs at the time of sale for measurement of the damage for the breach of warranty.

The court denied the defendant any diminution of the price of the pigs on account of profit he would have made on the pigs if they had been healthy; or on account of profit he would have made on the 140 pigs he had on the farm and was obliged to sell prematurely to avoid contagion; or on account of the labor defendant devoted to saving the sick pigs during the extra two to two and one-half months he was obliged to keep them on account of their sickness. The court observed that it was not contended that the plaintiff knew the pigs had cholera when he warranted them healthy and "of course, the whole transaction becomes an unprofitable venture for all parties concerned. It is very difficult to mete out exact justice in a situation of this kind. Both plaintiff and defendant are the losers."

The defendant submitted to the decision and took no appeal. The plaintiff has appealed. He has listed some thirteen points for argument, which we have examined, but we consider the gist of the contentions that require discussion to be: (1) that the court clearly erred in finding that the plaintiff represented and warranted to defendant that the pigs were in good condition and free from disease when sold; (2) that the court clearly erred in finding that the pigs were diseased so that there was a breach of express warranty of fitness of the pigs; (3) that the court clearly erred in finding that the fair market value of the pigs on March third should be taken to be $916.72 and that there was a failure of consideration for the checks to the extent of the difference between that amount and the amount of the checks; and (4) that the court erred in deducting three items aggregating $3,423.30 from the $4,339.92 ultimately obtained in order to arrive at the $916.72 market value on March third.

On this appeal we must sustain the findings of fact made by the District Court unless clearly erroneous. Rule 52(a), Fed.Rules Civ.Proc., 28 U.S.C.A.

### I.

As to the finding of the warranty.

Although the plaintiff testified that he did not represent or warrant that the 180 pigs he sold to defendant were in good health and free from disease, the defendant and his wife testified positively that he did so represent and warrant, and the finding of warranty by the District Court was supported by substantial evidence and not clearly erroneous. It may not be set aside.

### II.

As to the finding of breach of the warranty.

The pigs were transported in trucks from the barn at Carpenter to the defendant's farm and endured handling incident to being transported. The weather is referred to as cold. But there was no evidence of mishandling nor

of any extreme weather that rendered the transportation hazardous. The veterinarian, Dr. Roettiger, called by defendant made his examinations of the living and post mortems on several of the dead pigs on March seventh which was four days after the sale on the third. The doctor found "some hog cholera" and testified that the pigs " * * * were definitely infected on the day [the defendant] * * * bought them or before they came to his place at least." He "found lesions of hog cholera with little blood spots around through the different organs." On one pig he found an ulcer at the ileo cecal valve which is indicative of hog cholera. Temperatures of most all of the pigs were high, running up to 105 degrees which is usual with hog cholera. The doctor notified the state authorities about quarantine and the premises were quarantined. Another veterinarian, Dr. John William Moor, called by defendant, who examined the pigs dead and alive on March tenth, substantially corroborated the testimony of Dr. Roettiger. The lesions Dr. Moor found and described "are those which can be found in a hog dead of cholera" and in his opinion "it was very possible that the hog could have died from cholera" though "there was evidence of enteritis and pneumonia * * * each of which may have been secondary to cholera." The court's finding that the pigs were diseased as alleged and that the warrant was breached was sufficiently supported and not clearly erroneous.

### III.

As to the court's finding of the extent to which there was failure of consideration for the checks sued on.

■ The court's declaration that the sick pigs had no market value on March third was not erroneous. As the Supreme Court of Minnesota said in Hohenstein v. Dodds, 215 Minn. 348, 10 N.W.2d 236–238:

"There is no market value for diseased pigs. Minn.St.1941, § 614.-47, Mason St.1927, § 10450, provides: 'Every owner or person having charge of any animal, knowing the same to have any infectious or contagious disease, or to have recently been exposed thereto, who shall sell or barter the same,' shall be guilty of a misdemeanor. Under these circumstances plaintiff's pigs could have had no market value on May 29, 1940, in their diseased condition."

We do not find in his brief that plaintiff has disputed the declaration of the court that there is no market value for sick pigs or indicated any actual value the sick pigs could have had. The law forbade the sale of the hogs infected with cholera or the transportation of them back to plaintiff in Iowa. Therefore if the usual rule for damages for breach of warranty had been applied, namely, the difference between the value of the pigs as warranted and the value of the sick pigs as they were, plaintiff could have had no recovery in the action. But the court found that defendant had proceeded in a reasonable manner to cure the pigs and restore their market value and had succeeded to the extent of marketing a portion of them and obtaining $4,339.92 for them. The court deemed that amount to be their market value when defendant marketed them and stated: "Consequently, in arriving at defendant's damage, the expense incurred * * * in order to obtain a market price of $4,339.92 must be taken into consideration in order to arrive at the *net* market value * * * defendant obtained for the 145 hogs which he sold on June 26, 1954." (Emphasis supplied.)

We find no error and certainly no prejudice to the plaintiff in the court's refusal to enforce the usual rule for measuring damage for breach of warranty against him. The enforcement of it would have deprived him of any recovery. The Supreme Court of Minnesota pointed out in the Hohenstein case, supra, that under the general rule for measuring damages (in that case for tortious injury to sick pigs) market value is the usual test but "it is not the only measure of value." " * * * when it is not available or is not accurate, the

value * * * will be determined in some other way." We think the way the District Court followed in this case was fair and just and in accord with law.

In Joy v. Bitzer, 77 Iowa 73, 41 N.W. 575, 577, 3 L.R.A. 184, the Court stated the rule as follows:

"The warrantor of animals sold should be held liable on his covenants for all the direct and natural consequences of their breach. If the animals are warranted to be sound and free from disease, and are not so in fact, the warrantor should be held liable for the loss occasioned without fault on the part of the purchaser, by the communication of the disease to other stock with which the diseased animals are properly placed, in the ordinary course of business, and also for such other damages and expenses as are the direct and natural result of the breach of warranty. In our opinion it is not material that the seller does not know that his warranty is false, nor that it does not specify any kind of class of diseases. A warranty that an animal is sound and free from disease is necessarily a warranty against diseases of all kinds."

That the rule is the same in Minnesota is fairly to be inferred from the Hohenstein case, supra. See also Marsh v. Wedder, 16 Minn. 418 (Gil. 375), and annotation on sale of diseased animals, 51 A.L.R. 496.

It appears to be the position taken for the plaintiff that defendant was without remedy in this action even though plaintiff warranted the pigs to be healthy and they were in fact so diseased as to be of no value. But we do not find that position to be supported by law. It is without merit.

### IV.

In respect to the determination of a market value of $916.72 as of March 3, 1954.

The decision in this case did not award the plaintiff the relief he prayed for nor did it award the defendant what he prayed for. On the pleadings the plaintiff demanded recovery for the full amount of the checks and the defendant, after denying liability on the checks, demanded affirmative judgment for $5,800 against plaintiff. The court did not award the defendant any judgment at all on which he could have execution and all his claims for lost profits were denied. The court merely determined the extent to which the consideration for the checks had failed, which depended on how much of the $4,339.92 obtained on the market was net to defendant and how much of it he had been obliged to spend to save the pigs and obtain that price.

The point is argued here that the defendant did not set out in his pleading certain items he was obliged to and did expend for that purpose aggregating $3,-058.05. The evidence that he did make the expenditures for the items for that purpose was received and was competent and relevant to the general issue as to liability on the checks and as the court stated, " * * * it was obvious that to determine the market value of these pigs [as of March third], the expense incurred in treating and caring for the pigs had to be ascertained." The court accordingly recognized the pleading as amended "to conform to the proof," and as including the items proven. There is nothing in the record to indicate that the plaintiff was in any wise prejudiced by this action of the court which was in accord with proper practice. Ruud v. American Packing & Provision Co., 9 Cir., 177 F.2d 538. The complaint against the court's action is without merit.

On consideration of the whole case, we are satisfied that it was fairly tried and decided without any error prejudicial to appellant.

Affirmed.