## REUBEN HOHENSTEIN v. R. P. DODDS.[1]

June 11, 1943.

No. 33,399.

[1]Reported in 10 N. W. (2d) 236.

*Wilson & Blethen* and *Arthur H. Ogle,* for appellant.

*John R. Thomas* and *Schmitt, Johnson & Farrish,* for respondent.

LORING, JUSTICE.

This is an action against a licensed veterinarian to recover damages for his alleged negligence in the diagnosis and treatment of plaintiff's pigs. Defendant had a verdict, and plaintiff appeals from an order denying his motion for a new trial.

Plaintiff is a farmer who was engaged in raising a herd of purebred Spotted Poland China hogs. May 29, 1940, he noticed that one pig had died and some of the rest of the herd were ill. He called defendant to examine them. Defendant came to the farm and, after an examination, the extent of which is in dispute, vaccinated the pigs for cholera. Soon thereafter the pigs began to die rapidly until, all told, 63 out of a herd of 86 succumbed and most of the remainder of the herd were not "good pigs." It is plaintiff's contention that the pigs did not, in fact, have cholera and that defendant was negligent in wrongly diagnosing and vaccinating for this disease.

The principal assignment of error is the admissibility of opinion evidence of experts based upon conflicting testimony. Defendant produced as witnesses three experienced veterinarians who qualified as experts. Each of the witnesses was asked a question similar to the following:

"Now, doctor, based upon your knowledge of veterinary medicine, and based upon the testimony as to the condition of the hogs as related by the plaintiff, Mr. Hohenstein, and as related by Dr. Dodds, do you have an opinion as to what those hogs were suffering from at the time that Dr. Dodds was called to treat them?"

Over plaintiff's objection, each witness testified that he did have an opinion and that that opinion was that the pigs were suffering from hog cholera.

The testimony is conflicting as to the condition of the pigs at the time defendant came to the farm. Plaintiff testified that defendant did not examine the deceased pig but only "gave it a kick as he went by," that defendant spent less than a minute in examining the others, and that he did not take the temperature of any of the pigs before making his diagnosis. On the contrary, defendant testified that he thoroughly examined the dead pig, spent several minutes in examining the others, took the temperature of two, and that the temperature of one was 106 degrees and the other "a little bit higher." There is no dispute among the experts that a high temperature is a definite symptom of hog cholera, and that, if the pigs had necrotic enteritis, as plaintiff contends, the temperature would have been below 100 degrees.

Thus the witnesses were put in the position of weighing the facts upon which they based their opinions, as it is obviously impossible to assume as true facts that are in themselves contradictory. A question propounded in this way is fair neither to the witness nor to the jury. The rule is well stated in 3 Jones, Evidence (2 ed.) p. 2424, § 1324:

"A question of such nature, calling upon the witness for a conclusion from all the evidence heard but without assuming any facts established thereby, is obnoxious, where the facts are in dispute, as permitting the witness to accept such of the evidence as he believes to be true and to reject such as he does not deem reliable. In effect, the question is, 'Having heard the whole of the evidence, state your conclusion from that which you select as the basis of your judgment.'"

This is the general rule. 2 Wigmore, Evidence (3 ed.) p. 800, § 681; Quimby v. Greenhawk, 166 Md. 335, 171 A. 59; Lippold v. Kidd, 126 Or. 160, 269 P. 210, 59 A. L. R. 875. This court has recognized that the better practice is to question an expert witness by means of hypothetical questions. Crozier v. Minneapolis St. Ry. Co. 106 Minn. 77, 118 N. W. 256. Where facts are disputed, either party may put to an expert questions embodying the disputed facts

as his construction of the evidence would show them to be. Jorstad v. Benefit Assn. of Ry. Employees, 196 Minn. 568, 265 N. W. 814. But such a rule cannot be so construed as to have the expert witness base his opinion upon all the testimony and assume it to be true when there is a conflict in the testimony. As we said in Johnson v. Quinn, 130 Minn. 134, 136, 153 N. W. 267, 268, in regard to an objection to a hypothetical question:

"It is of course true that it must be made plain to the jury as well as to the expert what facts he bases his opinion on, and he must not be left to decide between conflicting facts, * * *"

Here, a material fact as to the condition of the pigs on May 29, 1940, that is, whether or not the doctor examined and took their temperature, is sharply in dispute. It was reversible error to ask the expert witnesses to form an opinion based upon this testimony.

■ While technically the question propounded was based upon the condition of the pigs on the day in question, there is danger that the witnesses might have assumed from the phrase "as related by Dr. Dodds" that they might take into consideration the defendant's expert opinion. This, of course, would be error. An expert witness may not base his opinion on that of another expert. Crozier v. Minneapolis St. Ry. Co. 106 Minn. 77, 118 N. W. 256, *supra.*

■ In view of the necessity of a new trial, the proper measure of damages must be considered. The court charged the jury, in effect, that they were to consider the market value of the pigs on May 29, 1940, in the condition in which the doctor found them, considering the fact that they were sick, and the market value to be measured by the amount plaintiff could have sold them for that day.

There is no market value for diseased pigs. Minn. St. 1941, § 614.47 (Mason St. 1927, § 10450), provides: "Every owner or person having charge of any animal, knowing the same to have any infectious or contagious disease, or to have recently been exposed thereto, who shall sell or barter the same," shall be guilty of a misdemeanor. Under these circumstances, plaintiff's pigs could have had no market value on May 29, 1940, in their diseased condition.

We recognize the general rule that in case of tortious injury to personal property market value is the usual test; but when it is not available or is not accurate the value of the property will be determined in some other way. It is not the only measure of value. 1 Sedgwick, Damages (9 ed.) p. 504, § 250. It is the purpose of the law to give compensation. Keyes v. M. & St. L. Ry. Co. 36 Minn. 290, 30 N. W. 888.

The proper measure of damages is the difference between the value of the pigs as they were on the date of defendant's call, if they were to receive proper treatment, and the value of those which survived defendant's treatment. To determine their value on the day of call, it would be necessary to determine how many pigs would have been reasonably certain to survive under proper treatment and what their market value would have been in the condition in which the survivors were reasonably certain to be. See Bekkemo v. Erickson, 186 Minn. 108, 110, 242 N. W. 617.

■ Defendant contends that there was no evidence from which the jury could find negligence on his part. There was evidence of his admissions that the pigs had necro and opinion evidence that they had it. If so and they were not treated for it, even if they also had cholera, the case would be for the jury.

Reversed.

Mr. Chief Justice Henry M. Gallagher took no part in the consideration or decision of this case.