CHRIS BAKER v. MacGILLIS GIBBS COMPANY
AND ANOTHER.[1]

February 18, 1944.

No. 33,610.

*William A. Tautges* and *B. H. Bowler,* for relator.
*Brenton A. McLeod,* for respondents.

[1]Reported in 13 N. W. (2d) 457.

470

THOMAS GALLAGHER, JUSTICE.

*Certiorari* upon the relation of Chris Baker to review the action of the industrial commission in affirming the decision of a referee in proceedings brought under the workmen's compensation act by relator, as employe, against MacGillis Gibbs Company, employer, and Employers Mutual Liability Insurance Company, insurer, wherein it was determined that the employe suffered total disability from May 28, 1940, until September 19, 1941, and thereafter was only partially disabled.

On May 28, 1940, and for 12 years prior thereto, relator was employed by MacGillis Gibbs Company as a common laborer. He was 50 years of age, had a sixth grade education, and had never performed any type of work except heavy labor. On that date, while thus employed, he fell a distance of some 18 feet into a steel tank, striking his head and back on steel rails at the bottom of it. It is undisputed that as a result of the fall he suffered a fractured right ischium, concussion of the brain, and additional severe injuries to his person. He was in the hospital eight days and thereafter was required to use crutches for a substantial period of time. Respondents commenced making payments based upon an agreed total disability. On June 30, 1941, relator was notified that because he did not submit to a so-called "preliminary operation" the payments would be discontinued. Upon being advised by his doctor that his condition would permit it, relator agreed to the operation, but respondents' surgeon then determined that it was not safe to operate upon him.

Respondents then took the position that payments should be discontinued as of September 16, 1941, because relator had recovered sufficiently to return to work. This was denied by relator, and on February 9, 1942, a hearing was had before a referee designated by the commission. Respondents' physician there testified that relator had sustained a 35 percent disability as a result of his accident. He attributed relator's history of weakness, faintings, and dizziness to hypotension or low blood pressure. Another physician called by respondents testified that relator, in his opin-

ion, was totally disabled at the time, but declared that such disability was in part due to relator's low blood pressure, which in turn had no connection with the accident.

Relator's physician testified that in his opinion relator was still totally disabled and that such disability had no connection with relator's low blood pressure. Relator testified that at that time he had lost some 40 pounds from his normal weight and still suffered extreme pain upon using the muscles of his back, arms, and legs; that he had a severe pain in his lower back; that he could not do even light labor for any sustained period of time; that he was obliged to lie down several times a day to rest; and that he was in a weakened condition and suffered headaches and dizziness at intervals.

The referee subsequently on April 2, 1942, made findings allowing compensation for total disability from May 28, 1940, to September 19, 1941, and for partial disability at the rate of $10 per week to March 19, 1942, the last date of hearing in the matter. In a memorandum made a part of his findings the referee stated:

"Upon the present record it appears the employe without question is totally disabled. The expert testimony concludes that the man has low blood pressure which in itself is sufficient to totally disable the injured man but which was not caused nor aggravated by said accident."

Presumably, the reduced compensation was ordered because of the conclusion that relator's total disability was due in part at least to low blood pressure or hypotension, not connected with the accident.

Relator appealed from the referee's award, whereupon the commission, pursuant to Minn. St. 1941, § 176.19 (Mason St. 1927, § 4283), with the consent of relator, on June 25, 1942, ordered the services of a neutral physician "in order to determine the issues on said appeal." The Mayo Clinic was selected as such neutral physician. In this order the commission specified:

"WHEREAS, The Commission is of the opinion that it is necessary

to employ the services of a neutral physician in order to determine the issues on said appeal * * *

"Now, Therefore, It Is Ordered That the Mayo Clinic * * * is appointed to act as neutral physician to the Commission * * * to read the record of testimony * * *; to examine * * * the * * * employe; and to report in detail the findings of said Mayo Clinic * * * as well as the opinion of said Mayo Clinic with respect to the following questions, to-wit:

"1. Whether said Chris Baker suffers from a condition of hypotension.

"2. Whether said condition, if it exists, antedated the accidental injury sustained by said employe on May 28, 1940.

"3. Whether, and to what extent, if any, said condition of hypotension has been aggravated by the accidental injury sustained by said employe on May 28, 1940.

"4. The extent of disability, if any, suffered by said employe as a result of said accidental injury.

"5. What, if any, further medical care and attention said employe may require to cure and relieve him from the effects of said accidental injury."

Relator twice visited Rochester to submit to examinations by the neutral physician. Following the final examination on July 15, 1942, the Mayo Clinic, through its physician, Henry W. Meyerding, made its report to the commission. This report concluded in part as follows:

"*Dr. E. V. Allen, medical consultant from the Vascular Section, examined him and reported his blood pressure normal,* stating that it was characteristic of his thin, lanky, long-lived type of individual; this man's mother lived to be eighty-four years of age and his father eighty-five years, while his grandmother lived to be ninety-eight years.

* * * * *

"It is my opinion that this man has sustained a severe injury to the lower back and pelvis which as far as the X-ray evidence is concerned apparently has healed, as there was no evidence of frac-

ture in our X-rays. He has spondylitis with lipping which is not uncommon in a man of his age but which may have been aggravated by the accident. *He has been laid up approximately 25 to 26 months* and wears sacro-iliac support with some benefit. I do not believe that he is fit, at this time, to carry on any heavy hard work *but believe that he should attempt to do some light form of work and gradually increase his activities;* also that he should continue wearing his sacro-iliac support." (Italics supplied.)

The report did not otherwise answer the questions submitted, nor did the commission thereafter request more specific answers in accordance with its original order.

Following the receipt of such report, the commission, on November 30, 1942, without further proceedings, made the following order:

"WHEREAS, the above entitled matter is pending before the Commission on appeal by Chris Baker, the above named employe, from the findings of fact and award of compensation of George Hottinger, referee, filed in the above entitled matter on April 2, 1942; and

"WHEREAS, the Commission by its order filed herein on June 26, 1942, appointed Mayo Clinic to act as neutral physicians to the Commission in said matter; and

"WHEREAS, Dr. Henry W. Meyerding, Mayo Clinic, Rochester, Minnesota, has acted as such neutral physician for the Commission in said matter and has filed his report on July 23, 1942, and the parties hereto having waived their rights to cross-examine said neutral physician with respect to his said report; and

"WHEREAS, it appears to the Commission that said *Chris Baker is not totally disabled* as a result of his accidental injury sustained by him on May 28, 1940, * * * and does not require further medical care and attention to relieve him from the effect of said accidental injury; and

"WHEREAS, it further appears that said employe was totally disabled as a result of said accidental injury from *May 28, 1940 to September 19, 1941; that he has been partially disabled as a result of said accidental injury from September 19, 1941;* and that there is no material evidence in the record from which it can be deter-

mined what said employe has been able to earn in his partially disabled condition;

"Now, Therefore, It Is Ordered, that the findings of fact and order of George Hottinger, referee, filed in the above entitled matter on April 2, 1942, be, and the same hereby are, vacated and set aside.

\* \* \* \* \*

"It Is Further Ordered, that said referee make use of such additional competent evidence now as the parties hereto may adduce, together with the evidence now in the record herein, to make such findings of fact and order herein as all the evidence then before him shall require." (Italics supplied.)

When the matter came on before the referee pursuant thereto, the referee, over relator's objection, determined that said order limited all further testimony to the sole question of employe's earning capacity "in his partially disabled condition subsequent to September 19, 1941, to date, and thereafter." Relator thereupon presented his own testimony and that of his wife that he was still totally disabled and unable to do either heavy or light work. His testimony was substantiated by that of his doctor, who gave the results of a final physical examination of relator made the day before the hearing and who testified that in his opinion relator was still totally disabled and unable to do even light work.

Respondents offered no medical testimony to controvert the evidence submitted by relator, but did offer the testimony of one B. M. Cosgrove, who is not a physician and who was advanced by respondents as an expert on vocational training and the placement of vocationally handicapped people. He had never seen or talked to relator prior to the hearing. He had read the record in the proceedings, including the conflicting testimony of relator's and respondents' witnesses, and had heard the oral testimony presented. Upon such foundation he was asked the question:

"Mr. Cosgrove, in your capacity as an employment and rehabilitation and training man, have you an opinion based on the testimony that you have read and heard, and on your own experience,

whether or not the petitioner, Mr. Baker, is able to perform any types of work?"

(In fairness, it should be said that present counsel did not appear as attorney for the employer and the insurer before the referee or the industrial commission.)

The question was objected to by counsel for relator on the grounds that it was incompetent, called for a conclusion, and was based upon an insufficient foundation. The objection was overruled, and the witness testified that in his opinion relator could do "certain types of assembling work * * * such as is done at the Honeywell plant and the Electric company, and certain kinds of light welding that requires no heavy lifting, and there is lens grinding which he could do, which is very light work, grinding lenses for glasses"; and that he was inclined to think he might be able to do shoe repairing.

Upon cross-examination, this witness was unable to state who would employ relator in any of the capacities mentioned in his present physical condition. The witness admitted that most of the occupations specified required special training; that undoubtedly relator would be unable to do the shoe repairing work mentioned on account of his condition; and summarized his testimony in the following response:

"I am firmly of the belief that a man no matter how badly injured he is if he can do something it will take his mind off his troubles, and if he knows he is making a little money he will be more content and gradually develop into an efficient workman."

No further testimony was offered by respondents.

Following this additional testimony, the referee made findings adopting the conclusion predetermined by the commission, that relator was totally disabled from May 28, 1940, to September 19, 1941, and was thereafter only partially disabled. He made further findings that relator, after September 19, 1941, was able to earn the sum of $10 per week. This award limited relator's compensation for the period subsequent to September 19, 1941, to the

weekly rate of $11.81. Relator again appealed to the industrial commission, which on May 25, 1943, affirmed the findings of the referee. It is the latter order which relator seeks to review.

The sole question presented is whether there are facts sufficient to sustain the findings above specified.

■ We are of the opinion that there are not sufficient facts to sustain the commission's determination that relator suffered total disability only from May 28, 1940, to September 19, 1941, and only partial disability thereafter, or to sustain the finding that he was capable of earning $10 per week subsequent to September 19, 1941. Testimony presented at the first hearing indicated that, with the exception of one of respondents' physicians, all witnesses were in agreement that up to that date relator had been totally disabled. Notwithstanding this exception the referee determined that relator was totally disabled at that time, but allowed only partial compensation because of his belief that relator's low blood pressure accounted for some measure of such total disability.

Subsequently the commission, "in order to determine the issues on said appeal," ordered an examination by a neutral physician. The latter's conclusions definitely eliminated any connection between relator's low blood pressure and his total disability, and indicated further that relator had been continuously "laid up" from the date of the accident, that he was unable then to do any heavy labor, and suggested that he attempt to do some light form of work. With no further proceedings and only this report before it, the commission vacated the referee's original order, determined that relator was only partially disabled after September 19, 1941, and remanded the case for testimony on relator's earning capacity subsequent to said date.

Respondents contend that the original testimony of their physician as to partial disability serves as a sufficient basis for the commission's finding as to only partial disability, notwithstanding the fact that all other testimony controverts it. While it is true that ordinarily this court will not weigh conflicting testimony passed upon by the commission, this rule would not appear to be

applicable here. All proceedings indicated that the commission at no time prior to its order of November 30, 1942, had occasion to weigh or consider the testimony of said physician, and that a neutral physician was selected "in order to determine the issues on said appeal." Hence there was no evidence to support the findings or conclusions of the commission as to partial disability or to justify the vacation of the referee's finding of total disability at the first hearing. The suggestion of the Mayo Clinic that relator attempt light work falls far short of giving support to a finding of partial disability or limited earning capacity.

■ An examination of the proceedings before the referee and the commission subsequent to the order of November 30, 1942, offers no additional support for the findings in question. The evidence further presented, with the exception of that of Mr. Cosgrove, wholly supported relator's claim of total disability. The testimony of Mr. Cosgrove is inadmissible and worthless as a basis for any finding in these proceedings. The hypothetical questions submitted to him failed to require the assumption of the truth of any of the conflicting statements in the record. The comments on this form of question made in the case of Hohenstein v. Dodds, 215 Minn. 348, 350, 10 N. W. (2d) 236, 237, seem applicable here. There it was stated:

"Thus the witnesses were put in the position of weighing the facts upon which they based their opinions, as it is obviously impossible to assume as true facts that are in themselves contradictory. A question propounded in this way is fair neither to the witness nor to the jury. The rule is well stated in 3 Jones, Evidence (2 ed.) § 1324:

" 'A question of such nature, calling upon the witness for a conclusion from all the evidence heard but without assuming any facts established thereby, is obnoxious, where the facts are in dispute, as permitting the witness to accept such of the evidence as he believes to be true and to reject such as he does not deem reliable. In effect, the question is, "Having heard the whole of the evidence,

state your conclusions from that which you select as the basis of your judgment."'

\* \* \* \* \*

"\* \* \* It was reversible error to ask the expert witnesses to form an opinion based upon this testimony."

Aside from the form of question, it is doubtful whether Mr. Cosgrove was qualified to render an opinion on the question involved. His answers on cross-examination indicated that his conclusions were entirely speculative and conjectural. See Green v. Schmahl, 202 Minn. 254, 278 N. W. 157.

Neither respondents' physician who had originally determined only partial disability, nor the one who had determined total disability at the initial hearing before the referee, was recalled for further testimony. In view of all the foregoing circumstances, we must conclude that up to the present there has been no evidence presented sufficient to sustain the finding that relator suffered only partial disability subsequent to September 19, 1941, or that he was thereafter capable of earning the sum of $10 per week. Upon the record here presented, relator still continues to suffer total disability and is entitled to full compensation on that basis.

The order of the industrial commission is reversed and the case remanded with directions to award full compensation for total disability and for such further medical expense as may be required.

Attorneys' fees of $100 are allowed relator.

Reversed.