## STATE v. PAUL WANGBERG.

136 N. W. (2d) 853.

September 3, 1965—No. 39,173.

*Padden & Dickel,* for appellant.

*Robert W. Mattson,* Attorney General, *J. Earl Cudd,* Special Assistant Attorney General, and *Warren A. Saetre,* County Attorney, for respondent.

OTIS, JUSTICE.

Defendant appeals from a conviction for murder in the second degree and from an order denying his motion for a new trial. The issues concern the propriety of the prosecutor's final argument and the foundation for opinion testimony dealing with the defense of insanity.

Defendant was a college student who became involved in a dormitory altercation in the fall of 1961 resulting in a lawyer's writing to his father, a Lutheran minister, recommending that defendant receive psychiatric treatment. When, on February 17, 1962, defendant was confronted with this letter, he became enraged and physically attacked his father. Alarmed by this irrational conduct, the father sent his family from the house and called the police. Meanwhile, defendant secured a loaded rifle and departed in the family automobile. Two police officers pursued him in a squad car and forced him off the road. As they approached the defendant, he shot and killed Officer Donald Myers.

The district court appointed a commission consisting of a doctor and a psychologist to examine defendant for the purpose of ascertaining whether or not he was competent to stand trial. On the basis of their report, the court found "the defendant is dangerous to the public, insane and has homicidal tendencies." Consequently he was committed to the state security hospital at St. Peter on April 19, 1962, and re-

mained there until December 2, 1962, when he was returned to Marshall County for trial.

■ That part of the prosecutor's closing argument of which defendant complains is as follows:

THE PROSECUTOR: "Now, there is another law, a higher law than that of our state law, and that is a law that Pastor Wangberg has taught his son, I am sure only too well; 'Thou shalt not kill.' The fifth commandment."

COUNSEL: "Excuse me now, we object to any religious element being considered here by the jury."

THE COURT: "Oh, he may argue."

COUNSEL: "That the argument of counsel there is prejudicial."

THE COURT: "You may continue, * * * ."

THE PROSECUTOR: "The commandment 'Thou shalt not kill' is a commandment that the defendant, Paul Wangberg, I am sure, only knows too well. Does the Bible make any excuse for a man who has blood on his hands? Did God excuse Cain when he killed his brother Abel? It is true that God did not consult perhaps with any psychiatrists. He didn't know Cain was suffering schizophrenia, delusions, hallucinations, paranoia, but I wonder if this makes any difference in the eyes of God. Neither the laws of the State of Minnesota or the law of our God makes any excuse for killing, for a killing such as the defendant, Paul Wangberg, committed on the evening of February 17, 1962. We are all subject to these same laws, be it God's law or the law of the State of Minnesota, and being we farmer, lawyer, doctor or pastor's son."

In our opinion, it was prejudicial error to overrule the defendant's objection to this line of argument. It was improper in two respects. First, because his father was a minister, it invited the jury to hold defendant to a higher standard of conduct than others not so situated. Clearly, it suggested there was little excuse for the commission of such a crime by one who had been so thoroughly indoctrinated in the teachings of the Fifth Commandment. Equally harmful was the prosecutor's intimation that the jury should be governed by the dictates of a

harsh and unforgiving Maker. Secondly, we believe the argument was highly prejudicial in. attempting to discredit, by reference to the Scriptures, the defense of insanity which, so the prosecutor argued, was not one recognized by the Lord. In short, the state asked for a conviction under Divine law even if the defendant was innocent under Minnesota law. In our opinion, this argument constituted an unwarranted and improper appeal to religious prejudice which requires a new trial.[1]

■ In eliciting the opinion of Dr. Grimes, one of the state's psychiatric experts, the prosecutor failed to frame a hypothetical question.[2] He asked the doctor whether in his opinion the defendant at the time of the shooting knew the nature of his act or that it was wrong, based on the doctor's examination, evaluation, diagnosis, and the history of defendant. An objection to foundation was overruled. We think it was well taken. Dr. Grimes predicated his opinion, among other things, on an interview with the defendant and his father, information he received from hospital employees, unspecified testimony in the courtroom and court records generally, the reports of defendant's experts, and out-of-court statements made to him by doctors and laymen purporting to have knowledge of the facts. Based on these sources of information Dr. Grimes testified that in his opinion at the time of the shooting defendant knew the nature of his act and understood it.

Dr. Hogan, the other psychiatric expert for the state, was also examined without a hypothetical question. Over defendant's objection as to foundation, he gave an opinion, based on all of the testimony in the trial including the opinions of all the other experts, that defendant understood the nature and consequences of his act and the difference between right and wrong at the time of the shooting.

Two experts for the defendant testified he was legally insane at the time of the shooting. There was thus the usual conflict in testimony be-

---

[1] Annotation, 45 A. L. R. (2d) 303, 321, 368.

[2] "Policy, as well as principle, require that the *form* of the question be expressly hypothetical; because otherwise the jury, and perhaps the witness, may be misled by the statement, as a proved or admitted fact, of that which is as yet only an assertion of counsel or of witnesses." 2 Wigmore, Evidence (3 ed.) § 683.

tween experts called by the defendant and those called by the state. In addition, there were introduced into evidence conflicting versions of the circumstances of the offense given by the defendant himself although he did not actually take the stand.

It was clearly improper to base an opinion on the opinion of other experts or on testimony which was in dispute.[3] The rule which we have consistently followed in this state[4] was well stated in Webb v. Minneapolis St. Ry. Co. 107 Minn. 282, 285, 119 N. W. 955, 956, as follows:

"* * * [T]he rule is that questions calling for the opinion of an expert witness must be based upon facts previously testified to by him, or facts testified to by others, or upon an agreed state of facts, or facts assumed hypothetically as true. The reasons for the rule are obvious; for, if the facts upon which the opinion is based are not stated or definitely referred to in the question, the jury cannot measure the value of the opinion, and the opposite party cannot intelligently offer opinion evidence in rebuttal. On the other hand, if the assumed facts upon which the opinion is to be based are stated or referred to in the question, the jury may determine whether or not the facts exist, and measure the value of the opinion accordingly, and the adversary party may rebut the assumed facts, or challenge the correctness of the opinion based thereon."

More recently we considered the question in Hohenstein v. Dodds, 215 Minn. 348, 10 N. W. (2d) 236. There we disapproved an opinion based on conflicting testimony because it required the expert witness to weigh the facts and accept what he believed to be true and reject what he deemed unreliable. In addition, we held it error for one expert to base his opinion on the testimony of another.

As applied to the facts of the instant case, the jury could not properly assess the weight to be given to the state's experts without know-

---

[3] Crozier v. Minneapolis St. Ry. Co. 106 Minn. 77, 79, 118 N. W. 256, 257; Baker v. MacGillis Gibbs Co. 216 Minn. 469, 477, 13 N. W. (2d) 457, 460; Riley v. Luedloff, 253 Minn. 447, 450, 92 N. W. (2d) 806, 809; Annotation, 175 A. L. R. 274, 287.

[4] Wilson v. Sorge, 256 Minn. 125, 128, 97 N. W. (2d) 477, 480.

ing the facts on which they relied in coming to their conclusions. Quite obviously the strength or weakness of such opinions must be judged by the foundations on which they rest, and in the instant case the jury was deprived of an opportunity to pass on this essential matter.[5] Since insanity was virtually the sole defense, and of necessity the jury was obliged to rely almost entirely on the testimony of the medical experts on this question, the objectionable testimony was directed at the very heart of the litigation. We therefore deem the error material and prejudicial.

Reversed and new trial granted.

---

[5] This question was well considered and discussed in Dieden and Gasparich, *Psychiatric Evidence and Full Disclosure in the Criminal Trial,* 52 Calif. L. Rev. 543, 558, as follows:

"There are two apparent dangers in this method of presenting expert testimony. There are remedies for each. First, the witness may express an opinion on the basis of factual material of which he has little or no personal knowledge without this fact being revealed. Second, the expert may do more than assume the validity of the facts upon which his opinion is based and thereby become an advocate on factual issues the determination of which belong solely to the court and jury.

"The trial judge has a unique opportunity to prevent or, at least, curb such abuses. This may be accomplished in any of three ways. First, on direct examination the witness could be compelled to state the sources of all information relied upon in support of the opinion. In addition, the court could allow a full and penetrating cross-examination to expose not only the expert's nonobjectivity, but his lack of knowledge gained from personal observation or investigation. Moreover, on cross-examination the hypothetical question should be permitted legitimate use in bringing to bear a consideration of facts which the witness omitted or of which he was unaware. Second, the trial judge in his discretion, if the circumstances required, could compel an offer of proof or informal examination of the expert, concerning the data upon which his opinion is based, outside the presence of the jury, and thereby could indicate the manner in which the testimony should be presented. Finally, where the expert has no personal knowledge but is wholly relying on assumed data, the court could require the examination to be by the hypothetical form on the assumption of proved or provable facts."