## ELLEN MELANDER AND OTHERS v. COUNTY OF FREEBORN AND OTHERS.[1]

March 4, 1927.

Nos. 25,795, 25,796.

**Finding sustained that plaintiffs had not been damaged.**

1. In an action for damages to riparian owners by the construction and maintenance of a dam pursuant to G. S. 1923, § 751, and for a mandatory injunction for its removal, *held*: The evidence supported the findings that the dam did not do more than the law authorized and that plaintiffs had not been damaged.

**Riparian owners not entitled to damages because court ordered dam to be lowered.**

2. Damages do not, upon the facts stated in the opinion, necessarily follow a direction of the court for a removal of a portion of the dam.

**When expert fees may be allowed to civil engineer.**

3. A civil engineer may, in the discretion of the trial court, be allowed expert witness fees.

Waters, 40 Cyc. p. 690 n. 1; p. 694 n. 36 New.
Witnesses, 40 Cyc. p. 2186 n. 32.

See note in 59 L. R. A. 821, 823; 27 R. C. L. 1197, 1199.

Plaintiffs appealed from a judgment in favor of the defendants in each of two actions in the district court for Freeborn county, Haycraft, J. Affirmed.

*H. H. Dunn* and *Moonan & Moonan*, for appellants.

*J. O. Peterson*, County Attorney, and *Elmer R. Peterson*, for respondents.

WILSON, C. J.

Plaintiffs appealed from an adverse judgment in each of the two actions which are here on the same record.

[1]Reported in 212 N. W. 590.

The county is defendant in both actions and plaintiffs are adjoining riparian owners. Certain taxpayers intervened. Freeborn lake is a meandered navigable body of water covering an area of 1,800 acres with a watershed of 7,300 acres. It is subjected to the usual public use. A part of plaintiffs' lands which adjoin the lake is low but usually tillable and a part usually marshy and not tillable. The latter is flooded during wet seasons and at times when the water is extremely high in the lake. Cobb river, which in its natural state was a shallow ravine but which in recent years has been deepened, is the outlet.

In 1909 the board of county commissioners of Freeborn county caused a wooden dam to be constructed in the outlet of Freeborn lake to maintain the water at its usual level. L. 1907, p. 115, c. 104. In 1910 this was replaced by a 48-foot concrete dam. It has concrete wings 75 feet long on each side beyond which are earth embankments. In 1915 defendants caused the V-shaped depression which had been left in the dam as a fishway to be widened to about 4 feet at bottom and 6 feet at top. About 11 feet to the north they put in another depression 11 feet wide at the bottom and 12 feet at the top. These two depressions are about 6 to 8 inches lower than the crest of the dam. This condition has since continued.

The actions are based upon the claim that the dam holds the water higher than the law (L. 1907, p. 115, c. 104, now § 751, G. S. 1923), authorizes. The court found to the contrary, and also that the structure had never been an obstruction to the free flow of the water from the lake and that plaintiffs' lands and crops had never been flooded and damaged by reason of the construction of the dam. The court found that the permanent water level of the lake is fixed and controlled by the height of the subcrests of the dam, i. e. the bottom of the depressions made in the dam in 1915, and that the balance of the dam extending above the height of the subcrest does not fix or control the permanent water level in the lake and does not serve any useful purpose. This part the court ordered removed to make the top of the dam, exclusive of the wings, on a uniform height with the present subcrest.

1. The law authorized the construction of the dam for limited purposes. Stenberg v. County of Blue Earth, 112 Minn. 117, 127 N. W. 496. Plaintiffs attack the findings of fact. It is claimed that the concrete wings, which are two feet higher than the subcrest, limit the outlet to the 50-foot dam and tend to hold the water back temporarily during high water. They are not the controlling force to maintain a permanent level. It does not require an engineer to say that they are a protection against erosion. If the space for the water to pass is equal to the space which nature provided, it is difficult to see how plaintiffs can justify their grievance because of the height of the wings.

Under the present construction the dam outlet permits a 4-inch rise in the lake level to run off in about 4 to 5 days. This would probably accumulate in a 24 hour 3 inch rain. When water gets to the top of the wings it is about 1.4 feet above the ordinary high-water mark of the lake in early times. Obviously such flood conditions are unusual and extraordinary. Plaintiffs are entitled to no more than the equivalent of what nature provided for their lands. If the county did no more than the law authorized, there is no liability. The statute contemplates that the natural conditions shall be preserved. The structure was installed under a competent engineer. Its capacity was enlarged by the changes made by the county in 1915. Water could not have gone down the outlet in its natural state with the freedom that it now does. A number of old settlers gave, as witnesses, their observations indicating that the water level since the dam was constructed was within the natural level. They went around the lake on May 4, 1921, when the water was just at the level of the subcrest. These witnesses gave many convincing details in support of the facts as found by the trial court. They disclosed conditions as they existed during the last 50 years. They asserted that the usual level of the water was higher prior to 1909 than since. True, for some years beginning in the early nineties crops were raised on Minnesota lands where for years there had been frog ponds. Appellants devoted much time in their briefs and on oral argument to direct and circumstantial evidence as to the lake

level, natural conditions, engineers' present structures, testimony not directly disputed and what they term conclusive. There is much evidence to the contrary, equally as strong and perhaps more convincing, which the learned trial court adopted as a basis for his findings. We think he was right. No service can be given by a discussion of the evidence. It centers about questions of fact.

We do not agree with appellants' claim that the court's direction of a lowering in the outlet is inconsistent with his finding that they are not entitled to damages. The record justified the finding that the dam as constructed was entirely within the power of the board and that it did no damage. Plaintiffs were not entitled as a matter of law to the reduction ordered. The court apparently observed from the evidence that the portion of the crest which is to be removed was not essential to maintaining the level of the water at its normal height, which is controlled by the subcrest, and that it perchance might retard the discharge in times of high water. This obstruction was useless and the court very properly directed that it be removed, but did not do so in recognition of any legal right of plaintiff. The useless and obstructive portion should have been removed even though plaintiffs were not being damaged by its presence. The court may have done this for the benefit resulting to the intervening space between high-water mark and the water. In this the public is interested. In re Minnetonka Lake Imp. 56 Minn. 513, 58 N. W. 295, 45 Am. St. 494. He may have directed its removal upon the theory that it could do no harm and might aid in a more rapid removal of flood waters which were not abnormal or due to the presence of the dam.

An appeal comes to us from the order of the court refusing to allow expert witness fees for a civil engineer whom plaintiffs called as an expert witness. Whether such fees are to be allowed rests exclusively with the trial court. G. S. 1923, § 7009. It is entirely a discretionary matter. Whether the court exercised such discretion we do not know. The argument is made that the court did not, but rejected the request upon the doctrine of Shterk v. Veitch, 135 Minn. 349, 160 N. W. 863; Martin v. M. & St. L. R. Co. 138

Minn. 40, 163 N. W. 983. These cases do not hold that a civil engineer may not be allowed expert fees for appearing as a witness in court, but relate to services involved in preparation for trial. As a witness in court he is the same as any other expert. Since, however, the question upon its merits rests with the trial court the party may, if so advised, make a further application for an allowance.

Affirmed.