# HANS BEKKEMO v. ERIC S. ERICKSON.[1]

May 6, 1932.

No. 28,856.

[1]Reported in 242 N. W. 617.

*O. K. Dahle* and *A. E. Sheridan,* for appellant.
*Arnold E. Hildahl* and *Duxbury & Duxbury,* for respondent.

WILSON, C. J.

Defendant appealed from a judgment of $731.70; also from an order denying his motion for a new trial; and from an order allowing expert witness fees.

Defendant is and for more than 40 years has been lawfully engaged in the practice of veterinary medicine. He is not a graduate of any veterinary school.

■ Plaintiff, a farmer, in the fall of 1929 owned 47 spring pigs weighing from 210 to 225 pounds valued at $8.70 per hundred, 10 sows weighing 450 pounds valued at $7 per hundred, and 50 fall pigs weighing about 40 to 50 pounds valued at $7.50 for each pig. On October 29, 1929, one spring pig had died and another was sick. On that night five fall pigs died, ten other fall pigs were sick. The ailment was cholera. Defendant was called professionally on October 30. He cut open four or five of the dead hogs. He did not diagnose the sickness as hog cholera. He said the pigs had "necro."

On November 4, 1929, another veterinarian was called and diagnosed the sickness as hog cholera. The next day he administered hog cholera serum. There were then but 27 hogs living. All these died except two sows and two spring pigs. The claim is made that the evidence does not support the verdict because the testimony as to the market value relates to well hogs and not to sick hogs. Appellant cites Tracy v. Liberty Oil Co. 208 Iowa, 882, 226 N. W. 178. It is also said that serum was not available for immediate use on October 29, 1929, and hence it was not possible for the treat-

ment to be given immediately had the diagnosis been correct. It required about 24 hours in which to obtain such serum.

There is expert testimony in the case that if hog cholera serum had been administered on October 30 all the sows would have been saved; that 85 to 90 per cent of the spring pigs would have been saved; and that 50 per cent of the fall pigs would have been saved. A delay of 24 hours in getting the serum would have perhaps reduced the saving. Yet the verdict for $240 shows that the jury figured rather conservatively, since the testimony as to the value was much in excess of the verdict. Such damages as here involved can never be determined with absolute accuracy or mathematical certainty.

The testimony as to value related to the well hogs, and the amount of the verdict clearly indicates that the jury were not basing their conclusion on the value of the sick hogs. Indeed, the court stated to the jury that "the measure of damages therefore is the reasonable market value of those hogs which you are reasonably certain would have been saved if the defendant had exercised that required degree of care, skill, and diligence."

The serum treatment is principally a preventive rather than a cure. The theory of the trial was that plaintiff sought to recover his loss incident to defendant's failure to diagnose the sickness, failure to recognize the presence of hog cholera, and to give the serum treatment to the hogs not yet sick. The testimony indicates that had this been done the loss would have been much less. The evidence is sufficiently certain and definite to sustain the verdict.

■ The gist of this action is the failure properly to diagnose the sickness. Such a question may ordinarily be one of judgment, and liability should not follow a mistake of judgment. But in this case defendant saw and examined the hogs, got the history of the sickness from plaintiff, and he cut open four or five dead hogs. He did not open the throat or lung cavity of any of them; he did not take out or examine the bladder, kidneys, spleen, or the liver. Defendant says that is not necessary. Plaintiff testified that defendant did not take out any of the intestines or organs. There is expert testimony in the record that defendant failed to conform to

the standards of the veterinary profession in the community, in that the post-mortem examination should have proceeded beyond an examination of the intestines and the stomach. It is said that the veterinarian in making such examination should open the hog, start at the front end and look at the larynx, and from there to the thoracic cavity and from the thoracic cavity into the abdominal cavity, and then should examine each of the organs found in these cavities. This was not done by the defendant. Thus the record presents a question of fact as to whether defendant did the things necessary to conform to the standards of his profession, the experts called by plaintiff claiming that defendant failed in that respect. The verdict of the jury is the equivalent of a finding that defendant negligently failed to discover the presence of the cholera. The evidence is sufficient to sustain that finding.

Defendant claims that he does not give the usual preventive treatment for hog cholera and does not treat hog cholera. On the trial he was not permitted to show that the live stock sanitary board had written him a letter forbidding him to use serum. His offer to prove his communication from the board and that he never used such serum, never held himself out as permitted to use such serum, and that this fact was common knowledge in the community was rejected. This offer seems to be broad enough to include both serum and virus.

There are two methods of immunizing swine to hog cholera. The single treatment method, which confers only a passive immunity for usually a short period of time, involves the use of anti-hog cholera serum only. This is known as the single treatment. The simultaneous method of immunization confers an active immunity or a lifelong immunity. It involves the simultaneous injection of anti-hog cholera serum and virulent blood or hog cholera virus. This is known as the double treatment. It is usually used on a young herd of hogs where the owner wants longer protection. The single treatment was used on plaintiff's hogs. The double treatment was not considered advisable.

What then is the effect of the exclusion of the proof offered? Defendant told plaintiff his hogs did not have hog cholera. He did

not find the presence of hog cholera. Had he done so and if it is true that he did not treat this disease, he presumably would have informed plaintiff of the presence of the disease and plaintiff could have called someone to administer the only recognized preventive treatment. Assuming, as indicated, that defendant did not have any permit as required by law, yet, perhaps reluctantly, he went to the farm to see the sick hogs and he there approved the owner's suggestion to give them Epsom salts in buttermilk. The approval was, under the circumstances, the equivalent of prescribing. The matter of administering the treatment for hog cholera is under the administration of the state live stock sanitary board, 1 Mason, 1927, § 5458-1. Having undertaken to examine the hogs to ascertain their trouble, it was defendant's duty to exercise the ordinary care as established by the standards of veterinary medicine in his community. The jury has said that he failed to do this. We cannot see any prejudice by the exclusion of the offered proof. If the facts were as claimed therein, the consequences would not have been any different. Whether the defendant did in fact treat hog cholera with serum or otherwise would seem to be immaterial, for the reason that plaintiff's cause of action is based upon defendant's failure properly to diagnose the malady from which plaintiff's hogs were suffering, as well as his failure to treat such ailment. Perhaps the offer should have been received as bearing upon the probability that defendant informed plaintiff that he was forbidden the use of such treatment, but defendant does not make that claim. He denied then and denies now the presence of hog cholera in plaintiff's herd. From defendant's own standpoint he never reached the place where he was required to announce his inability to administer the standard treatment. If his general reputation in the community was that he did not administer the usual treatment for hog cholera, it did not follow that plaintiff would not want his judgment and skill in diagnosing the sickness. If the ruling involved error it was without prejudice.

■ There is but one school of veterinary medicine. The fact that defendant was not a graduate of any veterinary school does not

put him in a different school from other members of the profession of veterinary medicine who have graduated from a veterinary college. The contention of appellant that nongraduate veterinarians constitute one "school" and graduate veterinarians another, with the result that each has its own standards, cannot be sustained. A school of medicine relates to the system of diagnosis and treatment rather than to the amount or extent of the learning and information of the members of the profession.

After the trial plaintiff made application to the court for an order fixing the fees of expert witnesses as follows:

| "Name | Residence | Days Attended | Mileage | Amount Claimed |
|---|---|---|---|---|
| "Dr. R. Fenstermacher | Minneapolis, Minn. | 3 | 350 | $96.00 |
| "Dr. M. C. Green | Spring Grove, Minn. | 3 | 20 | 76.20 |
| "Dr. B. H. Reide | Mabel, Minn. | 3 | 40 | 77.40 |
| "Dr. H. F. Ronnenberg | Houston, Minn. | 3 | 28 | 76.68" |

Over objection the court allowed the fees as requested and stated in his memorandum that $25 per day is not excessive for competent veterinarians.

The allowance of expert witness fees rests in the discretion of the trial court, G. S. 1923 (2 Mason, 1927) § 7009; 6 Dunnell, Minn. Dig. (2 ed. & Supp.) § 10361; Melander v. County of Freeborn, 170 Minn. 378, 212 N. W. 590.

District court rule No. 11 reads [175 Minn. xli]:

"*Expert witness fees.* In taxation of costs in civil cases a fee not exceeding $10 per day may be allowed for expert witnesses. Under special circumstances such fee may be increased, but not to exceed $25 per day."

The witnesses, except Dr. Fenstermacher, were the usual practitioners of veterinary medicine. In so far as they are concerned, we do not see any "special circumstances" in the case within the language of rule 11; hence their allowance should be limited to $10 per day.

This case is not an important one. It may be that $25 is not ordinarily excessive for competent veterinarians, but it does not follow that parties to lawsuits are to be subjected through expert witness fees to the payment of full value of the witnesses' services per day. It frequently happens that prevailing litigants who call expert witnesses pay them more for their services than are taxable against the losing party. It is not contemplated that the fees of expert witnesses are to be taxed at their full value. The rule is that the amount is to be $10 per day except under "special circumstances," which we think are absent from the instant case except as indicated. The merits of the case, as evidenced by the amount of the verdict of $240, protest against an allowance in excess of the general rule.

Relative to the witness Fenstermacher the situation is different. He has charge of the diagnosis laboratory at the University of Minnesota, and in this capacity he diagnosed specimens from the plaintiff's hogs and gave the opinion that the hogs were suffering from hog cholera. In addition to this he testified that if the proper treatment had been seasonably made many of the hogs would not have died from cholera. Dr. Fenstermacher was a necessary witness. He was required to travel some distance to attend the trial, and he was necessarily absent from his home and work for a period of time. His position is an important one, and he is a man of professional ability whose earning capacity and attainment is presumably greater than the ordinary practitioner.

The question as to whether or not there were "special circumstances" authorizing the allowance in favor of Dr. Fenstermacher is not free from doubt, but we are of the opinion that the record does not permit us to say that there was an abuse of discretion on the part of the trial court in allowing him fees on the basis of $25 per day.

■ The fact that Dr. Fenstermacher was in the service of the state does not disqualify him from being a witness in the case and from receiving compensation as an expert witness. The court has the right however to take into consideration the fact that he is

engaged in a public service, which in many cases may be an important element for consideration.

The order is affirmed as to the witness Dr. Fenstermacher and reversed as to the other three experts, and the judgment should be modified by allowing these three experts $10 per day instead of $25 per day. Otherwise the judgment is affirmed.

Judgment modified.

