Richard BERRES, et al., Appellants (C1–96–1723), Respondents (C4–96–1795),

v.

Ronald ANDERSON, Defendant (C1–96–1723) Appellant (C4–96–1795),

Susan Poirot, D.V.M., et al., Respondents.

Nos. C1–96–1723, C4–96–1795.

Court of Appeals of Minnesota.

April 15, 1997.

Review Denied June 11, 1997.

Maury D. Beaulier, Beaulier Law Office, Bloomington, Lawrence H. Crosby, Crosby & Associates, St. Paul, for Appellants Berres, et al.

Thomas S. McEachron, Votel & Anderson, Minneapolis, for appellant Anderson.

Kent F. Spellman, Candlin & Wright, Bloomington (Thomas Countryman, St. Paul, of counsel), for Respondents.

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

1. Paratuberculosis (Johne's disease) is a chronic, insidious disease of cattle generally affecting the mucosa of the intestinal tract and is accompa-

Considered and decided by KLAPHAKE, P.J., and WILLIS and MULALLY, JJ.

## OPINION

EDWARD D. MULALLY,* Judge.

Richard· and Kelly Berres and Berres Farms (the Berreses), plaintiffs in a veterinary medical malpractice action, and Ronald Anderson (Anderson), defendant and cross-claimant, appeal from the district court's grant of summary judgment in favor of respondents Susan Poirot, D.V.M., and the Farmington Veterinary Clinic (Poirot), contending the trial court erred in determining that the statute of limitations for veterinary medical malpractice bars their claims. Further, the Berreses and Anderson contend that the trial court erred in determining that prima facie cases of veterinary medical malpractice were not established. We affirm the trial court's determination that the following claims are barred by the statute of limitations for veterinary medical malpractice: (1) Poirot improperly failed to make a formal report to the state board of animal health (the board) following a positive diagnosis of mycobacterium paratuberculosis infection (Johne's disease)[1] in Anderson's dairy herd; (2) Poirot fraudulently failed to inform the Berreses that dairy cattle they planned to purchase from Anderson were infected with Johne's disease; and (3) Poirot breached a duty to inform the Berreses that dairy cattle purchased from Anderson were exposed to or infected with Johne's disease. Because the trial court erred in dismissing the Berreses' claim and Anderson's cross-claim that respondents deviated from the appropriate standard of care in treating and preventing Johne's disease in the Berreses' herd, we reverse in part and remand.

## FACTS

Poirot provided veterinary services to the Berreses' and Anderson's dairy herds. In November 1986, respondent Poirot submitted

nied by severe diarrhea, weight loss, and extremely rough appearance. Cheryl M. Bailey, Annotation, *Veterinarian's Liability for Malpractice,* 71 A.L.R.4th 811, 878 n. 4 (1989). The disease is contagious and transmitted by contact with an infected animal's fecal material. *Id.*

serum samples from four of Anderson's cows to the University of Minnesota College of Veterinary Medicine for testing. One of the four cows tested positive for Johne's disease and Anderson was informed of the results. Poirot did not report the positive test result to the Board of Animal Health. On the advice of Poirot, Anderson disposed of the infected cow. Poirot did not recommend any additional action or preventative care. Poirot continued to provide monthly dairy herd health checks. Johne's disease was not diagnosed again in Anderson's herd and Anderson believed his herd to be free from Johne's disease in October 1992, six years after disposing of the infected cow.

In October 1992, Anderson sold 42 head of cattle to the Berreses. Before purchasing the cattle, the Berreses inspected the cattle, inspected the breeding records, inspected the Dairy Herd Improvement Association milk production records, and hand-picked the cattle they wanted from the herd. Poirot was not retained to perform a pre-sale inspection of Anderson's cattle or asked by the Berreses to disclose any information concerning their health history.

About a month after the sale, the Berreses noticed that a first-calf heifer purchased from Anderson was suffering from diarrhea and weight loss. Poirot examined the heifer and told the Berreses that she suspected Johne's disease. She stated that Anderson had Johne's disease in his herd and advised the Berreses to dispose of the heifer. The Berreses disposed of the heifer without testing to confirm Poirot's suspicions. No treatment or preventative care was recommended to protect the remainder of the herd.

Additional cattle became ill and the Berreses sought the assistance of the University of Minnesota Veterinary Teaching Hospital in late 1993. The University of Minnesota veterinarians did not test for or find evidence of Johne's disease. In March 1994, Poirot tested 108 of the Berreses' cows for Johne's disease and 48 cows tested positive. This action commenced on November 18, 1994.

## ISSUES

I. Does the veterinary medical malpractice statute of limitations bar appellants' claims?

II. Was respondent entitled to summary judgment because the record reflects a complete lack of proof as to an essential element of appellants' claim?

## ANALYSIS

A motion for summary judgment shall be granted

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law.

Minn.R.Civ.P. 56.03. On appeal, the reviewing court views the evidence in the light most favorable to the party against whom judgment was granted and accepts as true factual allegations made by appellant. *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993).

### I.

### Statute of Limitations for Veterinary Medical Malpractice

An action for veterinary medical malpractice is barred when not commenced within two years after the date on which the cause of action accrues. Minn.Stat. § 541.01 (1996) (requiring actions to commence only after cause of action accrues); Minn.Stat. § 541.07(1) (1996) (all actions against veterinarians shall be commenced within two years). As a general rule, a cause of action in tort accrues at the time of the negligent act or omission that coincides with the injury. *Schmit v. Esser,* 183 Minn. 354, 359, 236 N.W. 622, 625 (1931). In medical malpractice cases, however, the statute of limitations begins to run on the date when treatment for a particular condition ceases. *Fabio,* 504 N.W.2d at 762; *Haberle v. Buchwald,* 480 N.W.2d 351, 354–55 (Minn.App.1992) (explaining that practical reason for termination of treatment rule is actionable treatment does not ordinarily consist of single act with easily determined precise time of occurrence), *review denied* (Minn. Aug. 4, 1992). The question of whether an action is barred

is a question of fact for the jury. *Schmit,* 183 Minn. at 359, 236 N.W. at 625.

■ The rationale underlying the "termination of treatment" rule is to foster the patient's reliance on the physician during the course of curative treatment because the trust relationship between patient and physician inhibits the patient's ability to discover acts of omission or commission constituting malpractice. *Haberle,* 480 N.W.2d at 355. Concerns underlying the "termination of treatment" rule are equally present in veterinary medical malpractice cases as both veterinarians and physicians deal with the investigation, prevention, cure and alleviation of disease. Animal owners rely on the veterinarian in the course of curative treatment. Therefore, we conclude that the termination of treatment rule applies in veterinary medical malpractice cases.

### A. Treatment and prevention of Johne's disease in the Berreses' herd.

The Berreses allege that Poirot departed from the appropriate standard of care when she failed to take appropriate measures to confirm, treat and prevent the spread of Johne's disease in their herd after suspecting the presence of Johne's disease in a first-calf heifer purchased from Anderson. They contend that summary judgment is inappropriate because a question of fact exists as to whether Poirot provided continuing treatment for Johne's disease until sometime in 1994, less than two years prior to commencement of the action. We agree. Furthermore, even without continuing treatment, a question of fact exists as to whether the cause of action accrued less than two years prior to commencement of the action.

■ This action commenced on November 18, 1994. The Berreses' cause of action accrued sometime in November 1992 when Poirot suspected Johne's disease in the herd and allegedly failed to take proper action in accordance with her unconfirmed diagnosis. The record does not supply the precise date of treatment. Thus, we cannot conclude as a matter of law that the statute of limitations bars the action.

Regardless of when the heifer was treated, the Berreses claim that the statute of limitations started to run when treatment of Johne's disease ceased for the entire herd, not just for the individual suspect animal. We agree. The practice of veterinary medicine differs from human medicine in that individual animals in a herd may be disposed of to prevent the spread of disease within that herd and to protect the economic interests of the dairy herd owner. The "patient" is the entire herd and treatment of the dairy herd does not cease when treatment of an infected animal ceases.

■ The Berreses contend that Poirot departed from the recognized standard of care applicable when a veterinarian suspects Johne's disease in a herd. Thus, the alleged malpractice is not misdiagnosis. *See Fabio,* 504 N.W.2d at 762 (when physician misdiagnoses disease, treatment ceases when physician decides not to recommend any further treatment). Under the termination of treatment rule, three factors must be considered in determining when treatment ceased: (1) whether there was a relationship between the veterinarian and the patient with regard to the particular injury or malady that the veterinarian is employed to cure; (2) whether the veterinarian continues to attend and examine the patient in relation thereto; and (3) whether there is something more to be done to effect a cure. *See Schmit,* 183 Minn. at 358, 236 N.W. at 625 (setting forth factors to consider in determining when physician's treatment ceases).

The record indicates the following: (1) Poirot suspected Johne's disease in one heifer sometime in November 1992; (2) additional animals in the Berreses' herd began to suffer from some kind of disease and Poirot provided treatment; and (3) Poirot tested the herd for Johne's disease in 1994. Viewing the evidence in a light most favorable to the opponent of the summary judgment motion, we conclude that a factual question exists as to whether Poirot's ongoing care and efforts to cure the disease afflicting the Berreses' herd constituted continuing treatment of Johne's disease.

## B. Failure to report Johne's disease in Anderson's herd.

■ The Berreses contend that respondents committed veterinary medical malpractice by failing to report the positive diagnosis of Johne's disease in Anderson's herd to the board of health. It is undisputed that: (1) one of Anderson's cows tested positive to Johne's disease in November of 1986; (2) Anderson disposed of that cow on December 2, 1986; (3) respondents provided monthly herd health checks for Anderson's herd; (3) Johne's disease was not diagnosed again in any cattle owned by Anderson; and (4) Anderson did not believe any of his cattle suffered from Johne's disease. Treatment of the individual diseased cow ceased when she was disposed of in December 1986. We conclude that there was no continuing treatment of Anderson's herd for Johne's disease. No further diagnoses were made, no symptoms on Johne's were noted in the record, and Anderson did not believe his herd had Johne's disease. In the absence of continuing treatment, the cause of action accrued in December 1986, almost eight years prior to commencement of the action. Even if the six-year statute of limitations applies, the action is barred. See Minn.Stat. § 541.05, subd. 1(2) (1996) (setting six years as statute of limitations for liability created by statute).

## C. Failure to inform.

■ The trial court determined that Poirot did not have a duty to inform the Berreses that one of Anderson's cows had tested positive for Johne's disease in 1986. The trial court further determined that, even if there was a duty, the cause of action would be barred by the two-year statute of limitations for veterinary medical malpractice. The undisputed facts establish that the sale took place in October of 1992. Thus, the duty to inform, if any, arose over two years prior to commencement of the action.

## II.

### Prima Facie Case

The Berreses allege that, after the introduction of Anderson's cattle into their herd, Poirot deviated from the appropriate standard of care in treating and preventing the further spread of Johne's disease. Poirot contends that the trial court properly granted summary judgment because appellants failed to establish a prima facie case of veterinary medical malpractice. We disagree. Poirot is not entitled to summary judgment because the record supplies at least some proof as to each of the essential elements of appellants' claim. See Lubbers v. Anderson, 539 N.W.2d 398, 401 (Minn.1995) (entitling defendant to summary judgment when record reflects "a complete lack of proof on an essential element of the plaintiff's claim").

■ Establishment of a prima facie case of veterinary medical malpractice requires demonstration of the following: (1) the applicable standard of care recognized by the veterinary community; (2) that the defendant departed from that standard; (3) that defendant's departure was a direct cause of plaintiff's injuries. See Plutshack v. University of Minn. Hosps., 316 N.W.2d 1, 5 (Minn. 1982) (setting forth elements of medical malpractice claim). A veterinarian has a duty to exercise the ordinary care, skill, and diligence as established by the standards of veterinary care in his community. Bekkemo v. Erickson, 186 Minn. 108, 110, 112, 242 N.W. 617, 618, 619 (1932).

## A. Standard of care and alleged departure.

The state board of animal health (the board) has the power and duty to protect the health of domestic animals. Minn.Stat. § 35.03 (1996).

A person who knows or reasonably suspects that a contagious or infectious disease exists in a domestic animal shall immediately notify the board.

Minn.Stat. § 35.06 (1996). If necessary to protect the health of domestic animals within the state, the board may quarantine domestic animals infected with or exposed to contagious disease. Minn.Stat. § 35.05 (1996). The board also has authority to decide "upon the killing of an animal affected with * * * paratuberculosis" and "the owner must receive the value of the net salvage of the carcass." Minn.Stat. § 35.08 (1996). Minn. Stat. § 35.95 (1996) subjects violators of

Minn.Stat. § 35.06 to civil penalties up to $10,000 and Minn.Stat. § 35.96 (1996) provides for criminal penalties. In addition, Minnesota rules create a presumption that a herd with a single cow testing positive for Johne's disease is positive for Johne's disease, if no herd plan has been submitted to the board.

A herd in which any cattle were positive on the most recent fecal culture or agid test and for which the owner has submitted no herd plan for eliminating paratuberculosis from the herd is a paratuberculosis-positive herd.

Minn.R. 1705.0731, subpt. 3 (1995).

The undisputed facts establish: (1) Poirot knew that one of Anderson's cows had tested positive for Johne's disease; (2) about one month after Anderson sold cattle to the Berreses, Poirot suspected that a first-calf heifer purchased from Anderson's herd had Johne's disease; (3) the first-calf heifer was disposed of based on the advice of Poirot; (3) Poirot informed the Berreses that Anderson had Johne's disease in his herd; (4) Poirot did not recommend testing for Johne's disease until over a year later in early 1994; and (5) Poirot did not recommend any preventative or hygienic measures to prevent the spread of Johne's disease in the Berreses' herd. Further, there is nothing in the record to indicate that the board was advised, in conformance with Minn.Stat. § 35.06, that Poirot reasonably suspected that a contagious or infectious disease existed in the Berreses' herd.

■ Based on a reading of Minnesota statutes and rules, a lay jury could reasonably determine that the State of Minnesota considers Johne's disease to be a serious risk to the health of cattle in Minnesota. Positive tests for Johne's disease must be reported to the board and the board has the authority to quarantine and kill cattle in order to prevent the spread of Johne's disease to other cattle within the state. Further, the Berreses purchased cattle from a paratuberculosis-positive herd. See Minn.R. 1705.0731, subpt. 3 (defining paratuberculosis-positive). Poirot knew the Berreses had purchased cattle from a paratuberculosis-positive herd and she observed symptoms of Johne's disease in the

Berreses' herd within a month of the sale. We conclude the record raises a fact question as to whether Poirot had a duty take preventative measures to determine whether other cattle had been infected; i.e. to test for Johne's disease in the other recently purchased cattle. If such a duty existed, it is undisputed that Poirot breached that duty.

In addition, the Berreses' expert witness testified that Poirot had a duty to teach the Berreses proper hygiene to reduce the spread of Johne's disease in their herd. The Berreses' expert did not explain what proper hygiene entailed. This testimony is sufficient, however, to establish a question of fact as to whether Poirot had a duty to explain proper hygiene to the Berreses to prevent the spread of Johne's disease. Even a lay jury could reasonably find that a veterinarian had a duty to recommend at least some kind of preventative measures to prevent the spread of a serious and contagious disease such as Johne's disease. It is undisputed that Poirot did not teach the Berreses the hygiene necessary to prevent the spread of Johne's disease in their herd. Furthermore, it is undisputed that Poirot did not recommend any measures to prevent the spread of Johne's disease in the Berreses' herd other than to dispose of the suspect heifer.

## B. Injury and causation.

■ The evidence shows that 48 of 108 of the Berreses' cows tested positive to Johne's disease in March of 1994. The Berreses had purchased 42 cows from Anderson in 1992 and at least one had been disposed of. There is nothing in the record to indicate that the Berreses' herd was infected with Johne's disease prior to identification of the suspect heifer. A question of fact exists as to whether Johne's disease spread to at least seven of the Berreses' other cows.

The record includes facts giving rise to a genuine issue for trial as to causation. See Zimprich v. Stratford Homes, 453 N.W.2d 557, 560 (Minn.App.1990) (concluding that proximate cause is usually question of fact for jury and can rarely be disposed of on motion for summary judgment). The evidence shows: (1) the cattle in the Berreses'

herd were not tested for Johne's disease in 1992 following Poirot's diagnosis of the first-calf heifer; (2) potentially infected cattle purchased from Anderson were not identified or disposed of; (3) the board was not informed and took no measures to protect healthy livestock within the Berreses' herd; (4) preventative hygiene, under Poirot's direction, was not practiced to prevent the spread of disease; and (5) there is no cure for cattle already infected with Johne's disease and no effective vaccine. Expert testimony was introduced that proper hygiene was not taught to reduce the spread of Johne's disease. These facts raise a causation issue as to whether proper hygiene would have reduced the spread of Johne's disease. Further, the disease is spread from infected to uninfected cattle. Again the facts raise an issue for trial as to causation because the infected cattle in the Berreses' herd may have been the source of the disease that spread to uninfected cattle. We conclude summary judgment was inappropriate because an issue of fact exists as to all elements of the Berreses' malpractice claim.

## DECISION

The district court's grant of summary judgment in favor of respondents is affirmed with respect to all claims except the Berreses' claim and Anderson's cross-claim that respondents deviated from the appropriate standard of care in treating and preventing Johne's disease in the Berreses' herd. With respect to that claim and cross-claim, we reverse and remand.

**Affirmed in part, reversed in part, and remanded.**